**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| **REALVIRT, LLC,** | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 1:15-cv-963** |
| **v.** | ) | |
| | ) | |
| **MICHELLE K. LEE,** | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

In this 35 U.S.C. § 145 action, plaintiff challenges a United States Patent and Trademark Office ("PTO") decision rejecting the patentability of the inventions claimed in U.S. Patent Application Serial No. 07/773, 161 (the " '161 Application"). At issue on plaintiff's motion for partial summary judgment, filed before the conclusion of discovery, are (i) whether the PTO's defense of lack of standing is barred by the doctrine of collateral estoppel, and (ii) whether the PTO's claim for attorney's fees pursuant to 35 U.S.C. § 145 must be stricken. Because the matter has been fully briefed and argued orally, it is now ripe for disposition.

### I.

The undisputed material facts set forth here are derived from the parties' statements of undisputed material facts, which are based almost entirely on the Administrative Record ("AR").

- Plaintiff Realvirt, LLC, is a Delaware Corporation with its office in Massachusetts.

- Defendant Michelle K. Lee is the Under Secretary of Commerce for Intellectual Property and the Director of the PTO.

- Plaintiff is the purported assignee and owner of the '161 Application, which describes inventions related to "innovative computer networking technology." Compl. ¶ 8.

- Anthony Z. Bono and Joachim C.S. Martillo are two of the six declared inventors of the inventions claimed in the '161 Application, which was originally filed on October 8, 1991.

- In 2007, Bono and Martillo, by counsel, filed a petition to revive the '161 Application, along with various attachments that purport to explain why Bono and Martillo had true and full ownership of the '161 Application. *See* AR, at A117-54.

- On February 28, 2013, after undertaking prosecution of the '161 Application with Bono and Martillo, the PTO, through the Office of Patent Legal Administration ("OPLA"), issued an Order to Show Cause challenging Bono's and Martillo's claims to ownership of the '161 Application. *See* AR, at A886-90.

- Importantly, around this time in February 2013, Bono and Martillo recorded with the PTO assignment documents that purport to transfer Bono's and Martillo's ownership interests in the '161 Application to plaintiff. *See* Pl. Ex. 7, Assignment Documents.

- On June 10, 2013, the OPLA issued a Second Order to Show Cause challenging Bono's and Martillo's ownership interests in the '161 Application. AR, at A990-92.

- On August 9, 2013, Bono and Martillo, by counsel, filed a response to the Second Order to Show Cause in which Bono and Martillo presented various documents purporting to explain that Bono and Martillo were the true and full owners of the '161 Application prior to when Bono and Martillo transferred their ownership interests to plaintiff. *See* AR, A2266-71.

- Thereafter, on September 30, 2013, the OPLA issued a decision stating that the documents submitted by Bono and Martillo sufficiently demonstrated ownership interests in the '161 Application, which had been transferred to plaintiff, and therefore the PTO could proceed with the prosecution of the '161 Application. AR, at A2742.

- On December 2, 2013, plaintiff received a Final Rejection of all claims then pending in the '161 Application, and on June 2, 2014, plaintiff appealed the Final Rejection to the PTO Patent Trial and Appeal Board ("PTAB"). Thereafter, on March 3, 2015, the PTAB issued a Decision on Appeal affirming in part the Final Rejection of all claims then pending in the '161 Application. On May 4, 2015, plaintiff requested a rehearing and on June 4, 2015, the PTAB denied that request, thus maintaining the affirmance in part of the Final Rejection. AR, at A3165-80.

- On July 29, 2015, plaintiff filed a complaint pursuant to 35 U.S.C. § 145, challenging the PTAB's final decision rejecting a rehearing on the grounds that the decision was "unwarranted by the facts, unsupported by substantial evidence, arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." Compl. ¶ 15.

- Thereafter, on September 28, 2015, the PTO filed an Answer, which includes the following defense: (i) "[u]pon information and belief, plaintiff does not own all right, title, and interest in the '161 Application, and therefore lacks standing to sue based on the '161 Application," and (ii) "[a]lternatively, other owner(s) in the '161 Application are indispensable parties to this action, mandating dismissal if they cannot be joined in this litigation." Answer, Second Defense.

- The PTO's Answer also includes the following defense: "[p]ursuant to 35 U.S.C. § 145, the PTO is entitled to reasonable expenses, including those related to compensation paid for attorneys' and paralegals' time, incurred in defending this action, regardless of whether the final decision is in plaintiff's favor." Answer, Third Defense.

## II.

Plaintiff first contends that it is entitled to summary judgment with respect to the PTO's defense that plaintiff lacks standing to bring this suit because the administrative proceedings have already established that plaintiff has an ownership interest in the '161 Application, and therefore the PTO's standing defense is barred by the doctrine of collateral estoppel.

The Supreme Court, explaining the collateral estoppel doctrine, has noted that "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation" or that party's "privies." *Montana v. United States*, 440 U.S. 147, 153 (1979) (quotation marks and citation omitted). Although neither party has cited any authority—nor has any been found—for the proposition that the doctrine of collateral estoppel applies with respect to PTO administrative proceedings, the Supreme Court has recognized that in some circumstances, the factual findings of an administrative body should be given preclusive effect in subsequent litigation. *See Univ. of Tenn. v. Elliott*, 478 U.S. 788, 799 (1986) (giving a

3

state agency's adversarial adjudication "the same preclusive effect to which it would be entitled in the [s]tate's courts" in a 42 U.S.C. § 1983 action). Importantly, however, the Supreme Court has further made clear that collateral estoppel should be applied to decisions of administrative agencies only where an administrative body "act[ed] in a judicial capacity and resolve[d] disputed issues of fact properly before it which the parties have had an opportunity to litigate." *Id.* at 797-98; *see also Regions Hosp. v. Shalala*, 522 U.S. 448, 463-64 (1998) ("Absent actual and adversarial litigation ... principles of [collateral estoppel] do not hold fast."). In addition, the Fourth Circuit[1] has explained that the doctrine of collateral estoppel may be applied only if the party seeking to invoke collateral estoppel can establish:

> (i) that "the issue or fact is identical to the one previously litigated";
>
> (ii) that "the issue or fact was actually resolved in the prior proceeding";
>
> (iii) that "the issue or fact was critical and necessary to the judgment in the prior proceeding";
>
> (iv) that "the judgment in the prior proceeding is final and valid"; and
>
> (v) that "the party to be foreclosed by the prior resolution of the issue or fact had a full and fair opportunity to litigate the issue or fact in the prior proceeding."

*In re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322, 326 (4th Cir. 2004).

These principles, applied here, compel the conclusion that the collateral estoppel doctrine does not apply to bar the PTO's standing argument. To begin with, "there is a general consensus among courts that ... [a] patent prosecution is not an adversarial, litigation-type proceeding, but a wholly *ex parte* proceeding before the PTO" because " 'although the process involves

---

[1] Where, as here, administrative proceedings occurred before a federal agency, "the law of the regional [federal] circuit"— not Virginia state law, as plaintiff contends—applies "to the general procedural question of whether issue preclusion applies." *See Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt.*, 778 F.3d 1311, 1314 (Fed. Cir. 2015). Thus, the law of the Fourth Circuit applies here.

preparation and defense of legal claims in a quasi-adjudicatory forum, the give-and-take of an adversary proceeding is by and large absent.' " *In re Method of Processing Ethanol Byproducts & Related Subsystems ('858) Patent Litig.*, No. 1:10-ML-02181-LJM, 2014 WL 2938183, at *7-8 (S.D. Ind. June 30, 2014) (quoting *Hercules, Inc. v. Exxon Corp.*, 434 F. Supp. 136, 152 (D. Del. 1977)).[2] Indeed, PTO proceedings lack the opportunity for cross-examination, discovery, and other tools available to adversarial litigants, and in fact, "because of the ever increasing number of applicants before it," the PTO "must rely," as occurred here, "on applicants for many of the facts upon which its decisions are based." *Norton v. Curtiss*, 433 F.2d 779, 793 (C.C.P.A. 1970).[3] Thus, where, as here, the underlying administrative proceedings were non-adversarial and wholly *ex parte* it is clear that the doctrine of collateral estoppel does not apply. *Elliott*, 478 U.S. at 797-98; *see also Regions*, 522 U.S. at 463-64 (holding that "[a]bsent actual and adversarial litigation ... principles of [collateral estoppel] do not hold fast").

Moreover, even assuming, *arguendo*, that the doctrine of collateral estoppel applies where, as here, the underlying administrative action was an *ex parte* prosecution of a patent rather than an adversarial adjudication, plaintiff's argument still fails because plaintiff cannot establish the elements of collateral estoppel as stated by the Fourth Circuit in *In re Microsoft Corporation Antitrust Litigation*, 355 F.3d at 326. Specifically, the ultimate ownership question underlying the standing defense in the present litigation is not an "issue or fact" that is

---

[2] *See also Hitachi Metals, Ltd. v. Quigg*, 776 F. Supp. 3, 8 (D. D.C. 1991) ("The patent examination process is an *ex parte* proceeding, not an adversarial one."); *CTS Corp. v. Electro Materials Corp. of Am.*, 469 F. Supp. 801, 823 (S.D. N.Y. 1979) (noting that "the *ex parte* prosecution of a patent application is not an adversary proceeding" and that "[t]he office and the applicant are more fiduciaries than antagonists").

[3] *See also Xerox Corp. v. Dennison Mfg. Co.*, 322 F. Supp. 963, 968 (S.D. N.Y. 1971) (noting that "the prosecution of a patent application is essentially an *ex parte* rather than an adversary proceeding and that the Patent Examiner accordingly must rely heavily upon the information furnished to him by the applicant").

"identical" to the question decided by the OPLA, nor was it "actually resolved" by the OPLA. *Id.* Furthermore, the PTO proceedings in no way provided the PTO a "full and fair opportunity" to litigate the ownership issue because the preliminary determination that Bono and Martillo had sufficiently demonstrated an ownership interest in the '161 Application was based solely on the documents submitted by Bono and Martillo. Moreover, this preliminary determination for purposes of proceeding with the prosecution of the '161 Application was in no way a "final" decision as to ownership, but was instead a threshold finding that the PTO could proceed with the prosecution of the '161 Application. *Id.* Indeed, the PTO cannot—and does not—determine ownership of patent applications because questions of title are grounded in state law. *Akazawa v. Link New Tech. Int'l, Inc.*, 520 F.3d 1354, 1357 (Fed. Cir. 2008) ("Our case law is clear that state law, not federal law, typically governs patent ownerships"). When the ownership of a patent application is unclear, the PTO will, as necessary to advance prosecution, "determine what effect a document has, including whether a party has the authority to take an action in a matter pending before the [PTO]." *Id.* Yet, contrary to plaintiff's contention, any such finding by the PTO, through the OPLA, is a preliminary finding to determine whether a prosecution may proceed. As such, the preliminary finding is not a final adjudication as to the ownership of the patent application; rather, ownership of the patent application is a matter of state law that must be determined by a court.

The cases plaintiff cites in opposition to the conclusion reached here are inapposite, as they do not support the proposition that an *ex parte* preliminary determination by the PTO that a patent applicant demonstrated an ownership interest in the patent sufficient to proceed with the patent prosecution gives rise to collateral estoppel. *See Elliott*, 478 U.S. at 797 (holding that the decision of a state administrative agency acting in a judicial capacity had preclusive effect in a

6

42 U.S.C. § 1983 suit); *Settle v. S.W. Rodgers, Co., Inc.*, 998 F. Supp. 657, 665 (E.D. Va. 1998) (holding that a decision of a state administrative agency acting in a judicial capacity did not have preclusive effect where the administrative decision did not meet all of the requirements for collateral estoppel).

Thus, contrary to plaintiff's contention, collateral estoppel does not apply here to bar the PTO from arguing that plaintiff lacks an ownership interest in the '161 Application, and therefore lacks standing to bring this suit. Accordingly, plaintiff's motion for partial summary judgment must be denied in this respect.

## III.

Plaintiff next contends that it is entitled to summary judgment with respect to the PTO's Third Defense in the Answer, which states that "[p]ursuant to 35 U.S.C. § 145, the PTO is entitled to reasonable expenses, including those related to compensation paid for attorneys' and paralegals' time, incurred in defending this action, regardless of whether the final decision is in plaintiff's favor." As the PTO has not yet sought to recover expenses pursuant to 35 U.S.C. § 145, it is neither necessary nor appropriate here to determine whether the PTO seeks expenses beyond what that statute authorizes.[4] That bridge will be crossed only if and when it becomes appropriate to do so. Accordingly, plaintiff's motion for partial summary judgment must be denied in this respect.

---

[4] It is worth noting, however, that a district court in this circuit recently concluded that "the language of § 145 neither specifically nor expressly requires plaintiffs to pay their attorney's fees," and therefore the statutory language "does not justify a deviation from the American rule" generally forbidding recovery of attorney's fees. *Nakwest, Inc. v. Lee*, No. 1:13-cv-1566, 2016 WL 520993, at *2 (E.D. Va. Feb. 5, 2016).

**IV.**

Accordingly, for the reasons stated here, plaintiff's motion for partial summary judgment must be denied.

An appropriate Order will issue.


Alexandria, Virginia
April 14, 2016


_____
T. S. Ellis, III
United States District Judge