IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| REALVIRT, LLC,<br>    Plaintiff,<br><br>    v.<br><br>MICHELLE K. LEE,<br>    Defendant. | )<br>)<br>)    Case No. 1:15-cv-963<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION

Plaintiff Realvirt, LLC filed this 35 U.S.C. § 145 action to challenge a United States Patent and Trademark Office ("PTO") decision rejecting the patentability of the invention claimed in U.S. Patent Application Serial No. 07/773, 161 (the "'161 Application"). By Order and Memorandum Opinion dated July 19, 2016, plaintiff's complaint was dismissed for lack of subject matter jurisdiction on the ground that plaintiff was not the owner or assignee of the '161 Application and hence lacked standing to pursue a § 145 action. *See Realvirt, LLC v. Lee*, ___ F. Supp. 3d ___, No. 1:15-cv-963, 2016 WL 3912855, *13 (E.D. Va. July 19, 2016), *appeal docketed*, No. 16-2669 (Fed. Cir. Sept. 20, 2016). The PTO then filed a motion for expenses, including attorneys' fees, pursuant to § 145. Shortly thereafter, plaintiff appealed the dismissal of the complaint to the Court of Appeals for the Federal Circuit, and that appeal remains pending. In response to the PTO's motion for expenses, plaintiff filed a motion to stay proceedings in this matter pending the Federal Circuit's resolution of plaintiff's appeal of the standing issue.

For the reasons that follow, (1) plaintiff's appeal does not remove jurisdiction to consider both the PTO's § 145 motion for expenses and plaintiff's motion to stay proceedings; (2) a stay

of proceedings is unwarranted because the PTO's motion for expenses must be resolved regardless of the outcome of plaintiff's appeal, and (3) the PTO is entitled to recover expenses and attorneys' fees incurred in this proceeding because plaintiff is an applicant, albeit one without standing, and is therefore obligated to pay the PTO's expenses and attorneys' fees.

## I.

The facts pertinent to the motions at bar may be succinctly summarized.[1]

Plaintiff Realvirt, LLC is a Delaware Corporation with its office in Massachusetts. Defendant Michelle K. Lee is the Under Secretary of Commerce for Intellectual Property and the Director of the PTO. The '161 Application describes a device that connects computers through multiple networks. Two inventors filed the '161 Application with the PTO in 1991, and in 1993 the PTO issued a Non-Final Rejection of the claims in the application. Later that year, the PTO issued a Notice of Abandonment to the inventors for failure to respond to the rejection notice. Approximately 14 years later, the inventors tried to revive the '161 Application, and later sought to transfer their purported ownership interest in the application to plaintiff. The PTO eventually allowed plaintiff, now the purported owner and assignee of the '161 Application, to proceed with its claims.[2] The PTO Examiner rejected the claims in the '161 Application in 2013, and the Patent Trial and Appeal Board ("PTAB"). affirmed that decision in 2015. Plaintiff then requested a rehearing, which the PTAB denied.

---

[1] For a more complete recitation of the facts, see *Realvirt, LLC*, 2016 WL 3912855.

[2] Although the PTO determined that plaintiff had a sufficient ownership interest in the '161 Application to proceed with its claims, that was not a final determination. See *Realvirt, LLC v. Lee*, ___ F. Supp. 3d ___, No. 1:15-cv-963, 2016 WL 1532236, * 1, 4 (E.D. Va. Apr. 14, 2016). Indeed, "the PTO cannot — and does not — determine ownership of patent applications because questions of title are grounded in state law." *Id.* at *4. As a result, any preliminary finding that the PTO made "is not a final adjudication as to the ownership of the patent application." *Id.*

At this point, plaintiff had the choice of either (i) appealing the PTAB's decision directly to the Federal Circuit for a review limited to the administrative record or, (ii) initiating a § 145 action in the district court, where plaintiff could introduce new evidence beyond the administrative record to support the application. *See* 35 U.S.C. §§ 141(a), 145.[3] Plaintiff chose the latter option and filed a § 145 action challenging the PTAB's final decision to reject the claims of the '161 Application. Thereafter, following discovery, plaintiff and the PTO filed cross motions for summary judgment on the merits of plaintiff's challenge to the PTAB's final decision. Additionally, the PTO filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), Fed. R. Civ. P., on the ground that plaintiff was not the owner or assignee of the '161 Application, and therefore lacked standing to pursue a § 145 action.

Following full briefing and oral argument, an Order and Memorandum Opinion issued granting the PTO's motion and dismissing the complaint on the ground that plaintiff was not an owner or assignee of the '161 Application and thus had no standing to bring the § 145 action. *See Realvirt, LLC*, 2016 WL 3912855, at *13. Given this result, the merits of plaintiff's claims in the '161 Application were neither reached nor decided. Following the complaint's dismissal, the PTO filed a motion for expenses under § 145. Specifically, the PTO requested $103,259.52, consisting of (i) $50,160.00 in expert witness expenses, (ii) $4,644.90 in deposition expenses, and (iii) $48,454.62 in attorneys' fees.

Plaintiff appealed the order dismissing the complaint to the Federal Circuit, and also filed a motion to stay proceedings in the district court concerning the motion for expenses pending the

---

[3] Section 145 states that an "applicant dissatisfied with the decision of the [PTAB] . . . may . . . have remedy by civil action against [the PTO]" in the district court. It further provides that "[a]ll expenses of the proceedings shall be paid by the applicant." 35 U.S.C. § 145.

3

outcome of the appeal. Plaintiff contends that a stay is appropriate because: (i) the Federal Circuit's resolution of the pending appeal regarding the standing issue may render it unnecessary to decide the § 145 expenses motion, (ii) the resolution of another case currently pending before the Federal Circuit, *Nantkwest, Inc. v. Lee*,[4] will resolve the issue of whether § 145 requires an applicant to pay the PTO's attorneys' fees, as well as other expenses, and (iii) the PTO, in any event, has not adequately documented its request for attorneys' fees.

## II.

A threshold issue, unaddressed by the parties, is whether jurisdiction exists to decide their motions given the filing of plaintiff's appeal. This question arises because the "filing of a notice of appeal is an event of jurisdictional significance — it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc.*, 459 U.S. 56, 58 (1982). But there are exceptions to this rule, one of which is that a district court may consider a request for fees after the filing of a notice of appeal. *See Langham-Hill Petroleum v. S. Fuels Co.*, 813 F.2d 1327, 1330–31 (4th Cir. 1987) (rejecting the argument that a district court improperly awarded attorneys' fees due to lack of jurisdiction after a notice of appeal had been filed).[5] Thus, there is jurisdiction to decide the parties' motions despite plaintiff's pending appeal.

---

[4] 162 F. Supp. 3d 540 (E.D. Va. 2016), *appeal docketed*, No. 16-1794 (Fed. Cir. April 5, 2016).

[5] *See also West v. Keve*, 721 F.2d 91, 95 n.5 (3d Cir. 1983) ("Should the district court prefer to consider a fee application during a pending appeal on the predicate case, the district court is not divested of jurisdiction to determine the application."); 15B Charles Alan Wright et al., Federal Practice and Procedure § 3915.6 (2d. ed. 1992) ("The rule that appeal can and must be taken upon final disposition of all matters other than attorney fees leaves the district court free to continue proceedings on the fee request pending appeal.").

4

### III.

Next, it is appropriate to address whether plaintiff's motion to stay should be granted given the pendency of plaintiff's appeal. Plaintiff argues that a stay is appropriate as the Federal Circuit's decision in the pending appeal may affect or render it unnecessary at this point to determine whether an applicant without standing is obligated to pay expenses under § 145. This argument fails because § 145's expenses provision requires all applicants, with or without standing, to pay the PTO's expenses, regardless of the outcome of the proceedings.

A patent applicant who is unsuccessful before the PTAB has two avenues of relief: (i) a direct appeal of the PTAB's decision to the Federal Circuit, which reviews the PTAB's decision based solely on the administrative record, or (ii) the filing of a separate § 145 civil action in the district court, which allows the court to determine whether the applicant should receive a patent based on both the administrative record and any new evidence the applicant wishes to introduce. *See* 35 U.S.C. §§ 141(a), 145; *see also Hyatt v. Kappos*, 625 F.3d 1320, 1322, 1338 (Fed. Cir. 2010) (en banc), *aff'd Kappos v. Hyatt*, 132 S. Ct. 1690 (2012). Should the applicant choose to proceed via a § 145 action, the statute states that "[a]ll the expenses of the proceedings shall be paid by the applicant." Importantly, the Federal Circuit, sitting en banc, has recognized that § 145's requirement that the applicant pay all expenses applies "regardless of the outcome" of the proceeding. *Hyatt*, 625 F.3d at 1337.

The specific question before the *Hyatt* court was whether § 145 imposed any limits on an applicant's right to present new evidence in a § 145 action. *Id.* at 1322–23. In holding that § 145 does not impose any such limits (apart from generally applicable evidentiary rules), the Federal Circuit rejected the PTO's argument that giving § 145 applicants a broad right to

introduce new evidence would encourage applicants to use that option — which is more expensive for the PTO than direct, on-the-record appeals to the Federal Circuit — or even conceal evidence before the PTAB and present it later in a § 145 action.[6] *Id.* at 1323, 1337. According to the Federal Circuit, there was no need to fear overuse of § 145 actions or evidentiary shenanigans because the "heavy economic burden" of paying all expenses *"regardless of the outcome"* of the § 145 proceeding would deter applicants from such "procedural gaming." *Id.* at 1337 (emphasis added). Indeed, because of that heavy financial burden, the Federal Circuit observed that an applicant's decision to choose the § 145 option could "reflect a belief that the application at issue is or could be especially commercially significant; in such a case, the applicant likely believes that the additional cost of a § 145 action may be merited." *Id.* Thus, the fact that § 145's expenses provision applies "regardless of the outcome" of the proceeding was pivotal to the Federal Circuit's conclusion that allowing applicants to introduce new evidence would not overburden the patent review system with frivolous § 145 actions. Indeed, § 145's expenses provision, as construed by the en banc Federal Circuit, plainly accomplishes its goal because the "vast majority of applicants pursue an on-the-record appeal instead of a § 145 action." *Id.*

The Federal Circuit's analysis of the expenses provision in § 145 finds further support in the parallel system for appealing decisions from the Trademark Trial and Appeal Board ("TTAB"). Under 15 U.S.C. § 1071(a)(1), dissatisfied trademark applicants can appeal a TTAB decision directly to the Federal Circuit, whereas § 1071(b)(1) permits them to file a civil action in the district court. Under § 1071(b)(3), "all the expenses of the proceeding shall be paid by the

---

[6] The PTO argued that applicants might conceal evidence before the PTAB "to avoid generating adverse prosecution history." *Hyatt*, 625 F.3d at 1337.

party bringing" the separate civil action. In *Shammas v. Focarino*, the Fourth Circuit held that the phrase "all the expenses of the proceeding" in 15 U.S.C. § 1071(b)(3) includes attorneys' fees. 784 F.3d 219, 227 (4th Cir. 2015).[7]

In reaching that decision, the Fourth Circuit relied on features of the trademark review system that are identical to those in the patent review system. As with the patent review system, a trademark applicant's appeal to the Federal Circuit is limited to the PTO administrative record, whereas applicants in a § 1071(b)(1) civil action may present new evidence. *Id.* at 225. And as with the patent review system, civil trademark actions in the district court are more costly to the PTO than on-the-record appeals to the Federal Circuit. *See id.* ("De novo civil actions under § 1071(b)(1) . . . contemplate a more fulsome and expensive procedure."). Noting the greater cost of § 1071(b)(1) civil trademark actions, the Fourth Circuit observed that "Congress obviously intended to reduce the financial burden on the PTO in defending such a proceeding." *Id.* The Fourth Circuit concluded that "in light of [that] purpose, it makes good sense to construe 'expenses' to include attorneys fees and paralegals fees because the time that PTO employees

---

[7] To be sure, § 1071(b)(3) and § 145 are not identical. Section 1071(b)(3) provides that applicants must pay all expenses "whether the final decision is in favor of such party or not," whereas § 145 does not contain such language. Yet, as the history of § 145 makes clear, this difference in language is not significant. When Congress passed § 145's predecessor in 1870, that statute provided that the applicant must pay all expenses "whether the final decision is in his favor or not." Act of July 8, 1870, ch. 230, sec. 52, 16 Stat. 198, 205 (1870). That language remained in the statute until 1952, when the statute was codified as § 145 in the United States Code as part of Congress' wholesale reorganization of federal statutes. Act of July 19, 1952, ch. 13, § 145, 66 Stat. 792, 803 (1952); S. Rep. No. 82–1979, at 2395 (1952). There is no indication that Congress removed that language to alter the applicant's obligation to pay all expenses, win or lose. *See* S. Rep. No. 82–1979, at 2415; *see also Hyatt*, 625 F.3d at 1330. Indeed, Congress emphasized that the 1952 re-codification made "no fundamental change in the various appeals and other review of Patent Office action." S. Rep. No. 82–1979, at 2400. As a result, the best explanation for the removal of the phrase "whether the final decision is in his favor or not" is that it was an inadvertent omission. Consistent with this history, the en banc Federal Circuit has concluded that the expenses provision in § 145 applies "regardless of the outcome." *Hyatt*, 625 F.3d at 1337.

7

spend in defending the [PTO] will constitute the majority of the PTO's expenses in such a proceeding." *Id.* The Fourth's Circuit's analysis of the phrase "all expenses" in the context of the trademark review system, which is identical in all relevant respects to the patent review system, points persuasively to the en banc Federal Circuit's conclusion that § 145's expenses provision applies "regardless of the outcome" of the proceeding. *Hyatt*, 625 F.3d at 1337.

Because the plaintiff must pay the PTO's expenses regardless of the outcome, there is no need to await the outcome of plaintiff's Federal Circuit appeal: plaintiff must pay "all expenses" win or lose. Plaintiff contends, however, that if the Federal Circuit affirms that plaintiff lacks standing to pursue its patent application, then plaintiff still is not obligated to pay because "plaintiff lacks standing to bring a § 145 action because it is not an 'applicant' within the meaning of that statute." *Realvirt*, 2016 WL 3912855, at *10.

That argument fails because it over-reads the district court's opinion. An "applicant" is "[o]ne who requests something; a petitioner." Black's Law Dictionary 115 (9th ed. 2009). Plaintiff is clearly an "applicant" under that definition: plaintiff is a petitioner seeking a decision as to whether plaintiff is "entitled to receive a patent for [its] invention." 35 U.S.C. § 145; *see also Power Integrations, Inc. v. Kappos*, 6 F. Supp. 3d 11, 20 (D.D.C. 2013) ("[T]he term 'applicant' in section 145 refers to a party 'dissatisfied with the decision of the [PTAB] in an appeal under section 134(a) of this title.'") (quoting 35 U.S.C. § 145) (emphasis omitted). Plaintiff's problem, however, is that plaintiff is an "applicant" without standing, which means that plaintiff is not a proper "applicant" under § 145. Properly read, that is all the district court opinion states. A contrary conclusion — that applicants without standing are not required to pay the expenses of the proceeding — would create an unintended incentive for applicants with a questionable ownership interest in the application to file § 145 actions instead of seeking on-the-

record review through an appeal to the Federal Circuit. For all the reasons discussed above, § 145's expenses provision is the lynchpin that ensures applicants will think twice before filing an action under that statute.[8]

Because the expenses provision in § 145 requires plaintiff to pay the PTO's expenses regardless of the outcome, there is no need to await the Federal Circuit's resolution of the pending appeal. Moreover, deciding the expenses issue now gives the Federal Circuit the option to address and decide all issues in this action, thereby avoiding piecemeal appeals in this case. Accordingly, plaintiff's motion to stay proceedings pending the outcome of its appeal is appropriately denied.[9]

IV.

Because plaintiff is an "applicant" that must pay "all expenses" of this § 145 action, regardless of the outcome, the next question is whether the phrase "all expenses" in § 145 obligates plaintiff to pay the PTO's attorneys' fees. It does.

That question is resolved by looking again to § 1071(b)(3), which, like § 145, provides that the applicant must pay "all the expenses of the proceeding." In the *Shammas* decision, the Fourth Circuit stated that "in ordinary parlance, 'expenses' is sufficiently broad to include attorneys fees and paralegals fees." *Shammas*, 784 F.3d at 222. And, as the Fourth Circuit

---

[8] The PTO argues that the doctrine of invited error forecloses plaintiff's position that plaintiff is not obligated to pay expenses under § 145 because it lacks standing. The PTO's argument is unpersuasive, but in any event, there is no need to address it because plaintiff is an "applicant" without standing, and as a result is still obligated to pay expenses for the reasons stated above.

[9] Plaintiff also argues that a stay is appropriate so that the Federal Circuit can decide in *Nantkwest, Inc. v. Lee* whether § 145's expenses provision authorizes attorneys' fees. *See Nantkwest, Inc. v. Lee*, 162 F. Supp. 3d 540 (E.D. Va. 2016), *appeal docketed*, No. 16-1794 (Fed. Cir. April 5, 2016). For the reasons stated in Part IV, *infra*, a stay is not warranted here because § 145's expenses provision obligates the applicant to pay the PTO's attorneys' fees.

9

pointed out, the statute also "modified the term 'expenses' with the term 'all,' clearly indicating that the common meaning of the term 'expenses' should not be limited." *Id.* Furthermore, "even though the PTO's attorneys [are] salaried, . . . the PTO nonetheless incur[s] expenses when its attorneys [are] required to defend the [PTO] in the district court proceedings, because their engagement divert[s] the PTO's resources from other endeavors." *Id.* As a result, the Fourth Circuit held that "§ 1071(b)(3) requires a dissatisfied . . . trademark applicant who chooses to file an action in district court challenging the final decision of the PTO, to pay, as 'all expenses of the proceeding,' the salaries of the PTO's attorneys and paralegals attributed to the defense of the action." *Id.* at 227; *see also Robertson v. Cooper*, 46 F.2d 766, 767, 769 (4th Cir. 1931) (holding that, under a previous version of § 145, the word "'expenses' [includes] more than that which is ordinarily included in the word 'costs,'" and as a result the PTO could recover an attorney's travel expenses). Because § 145 also contains § 1071(b)(3)'s "all expenses of the proceeding[]" language, § 145 requires dissatisfied patent applicants to pay the expenses of PTO attorneys and paralegals involved in the § 145 proceeding.

Plaintiff contends that the Fourth Circuit's analysis in *Shammas* has been abrogated by the recent Supreme Court decision in *Baker Botts L.L.P. v. ASARCO LLC* addressing the proper interpretation of statutes that purport to shift attorneys' fees to a losing party. There, the Supreme Court considered whether the phrase "reasonable compensation for actual, necessary services," which unquestionably allows attorneys to receive compensation for services rendered in connection with the administration of a bankruptcy estate, also permits attorneys to recover fees incurred in successfully litigating their bankruptcy compensation award. 135 S. Ct. 2158, 2162–63, 2165 (2015). The Supreme Court held that the phrase did not authorize the attorneys to recover from the losing party the fees the attorneys incurred in defending their compensation.

*Id.* at 2163. The Supreme Court stated that the "basic point of reference when considering the award of attorney's fees is the bedrock principle known as the American Rule: Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Id.* at 2164 (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252–53 (2010)). The Supreme Court went on to state that deviations from that bedrock rule require "explicit statutory authority." *Id.* (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 602 (2001)). In sum, the Supreme Court concluded that the phrase "'reasonable compensation for actual, necessary services rendered' neither specifically nor explicitly authorizes courts to shift the costs of adversarial [fee] litigation from one side to the other," and as a result the statute did not authorize the recovery of attorneys' fees incurred in successfully litigating the bankruptcy compensation award. *Id.* at 2165.

Plaintiff argues that under *Baker Botts*, § 145's phrase "all expenses of the proceedings" is not sufficiently explicit to warrant deviating from the American Rule. This argument is unpersuasive. Although the Supreme Court decided *Baker Botts* after the Fourth Circuit decided *Shammas*, the Fourth Circuit actually addressed this argument in *Shammas* with respect to § 1071(b)(3) — that the phrase "all expenses" in that statute was not sufficiently explicit to deviate from the American Rule. In this respect, the Fourth Circuit explained that the American Rule does not apply to § 1071(b)(3) because the American Rule "provides only that the prevailing party may not recover attorneys' fees from the losing party." *Shammas*, 784 F.3d at 223 (internal quotation marks omitted) (emphasis omitted). Therefore, the "requirement that Congress speak with heightened clarity to overcome the presumption of the American Rule thus applies only where the award of attorneys fees turns on whether a party seeking fees has prevailed to at least some degree." *Id.* Because § 1071(b)(3) requires "the payment of attorneys

11

fees without regard to a party's success," the Fourth Circuit concluded that § 1071(b)(3) is not a prevailing-party "fee-shifting statute that operates against the backdrop of the American Rule." *Id.*

Section 145, like § 1071(b)(3), requires the applicant to pay all expenses "regardless of the outcome." *Hyatt*, 625 F.3d at 1337. As a result, § 145 is not subject to the *Baker Botts* "heightened clarity" requirement needed to overcome the presumption of the American Rule. *See Shammas*, 784 F.3d at 223. Nothing in *Baker Botts* alters this conclusion, because *Baker Botts* simply emphasized what the Fourth Circuit stated in *Shammas* — that deviation from the American Rule requires explicit statutory authorization. *See Shammas v. Lee*, ___ F. Supp. 3d ___, No. 1:12-cv-1462, 2016 WL 2726639, *3–4 (E.D. Va. May 9, 2016) (explaining how *Baker Botts* does not affect the reasoning of the Fourth Circuit's *Shammas* decision).

V.

Plaintiff's final contention is that the PTO's request for attorneys' fees is improper because the PTO has not provided the proper documentation for its requested fee award. Plaintiff argues that the PTO has failed to produce any documents detailing the specific dates, hours, and tasks for any of the PTO attorneys or paralegals who worked on this case. That level of specificity is not required because the PTO attorneys and paralegals are salaried government employees. Thus, the PTO must use "the actual salaries of the lawyers and paralegal[s] instead of prevailing market rates" to calculate the attorneys' fees, thereby allowing the PTO to be reimbursed for "the portion of its attorneys' [and paralegals'] salaries that were dedicated to this proceeding." *Shammas v. Focarino*, 990 F. Supp. 2d 587, 592 (E.D. Va. 2014), *aff'd Shammas v. Focarino*, 784 F.3d 219 (4th Cir. 2015) (quotation marks omitted). Therefore, the PTO needs

to provide sufficient documentation of its attorneys' and paralegals' salaries, as well as the number of hours those professionals worked on this case. *Id.* The PTO has done so here.

Specifically, the PTO has provided sworn declarations stating the annual salaries and the hours spent on this case from the two attorneys that worked on this case. The declarations also include the number of hours and the hourly rate of the paralegal who worked on this case. *See* Decl. of Michael S. Forman; Decl. of Philip Warrick. That documentation adequately supports the PTO's requested $48,454.62 in attorneys' and paralegal fees. *See Shammas*, 990 F. Supp. 2d at 592 ("Thus, the resulting product of the hours worked times the actual hourly rate . . . is the amount § 1071(b) requires plaintiff to pay the PTO.").

## VI.

For the foregoing reasons, (i) plaintiff's motion to stay the proceedings must be denied, (ii) the PTO's request for expenses, including attorneys' fees, must be granted, and (iii) plaintiff must be required to pay $103,259.52 to the PTO, consisting of $50,160.00 in expert witness expenses, $4,644.90 in deposition expenses, and $48,454.62 in attorneys' fees.

An appropriate order will issue.

Alexandria, Virginia
October 27, 2016

_____
T. S. Ellis, III
United States District Judge